IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.: 5:11-21-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| RAFAEL RIOS-VILLANUEVA | ) | |
| _____ | ) | |

This matter is before the court on the defendant's *pro se* motion for a reduction in his sentence pursuant to the First Step Act of 2018[1] and 18 U.S.C. § 3582(c)(1)(A) (ECF No. 612). In his motion, the defendant relies upon the threat posed by the ongoing COVID-19 pandemic and contends that he has "serious long-COVID and health conditions." He also complains that he has not received First Step Act credits, that his conditions of confinement are harsh, and that he is no longer a danger to society.

The government has responded in opposition, arguing that the defendant has not shown an extraordinary and compelling reason for release and that the § 3553(a) sentencing factors do not weigh in favor of his release. The defendant did not reply to the government's response.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motion is respectfully denied.

---

[1] Pub. L. 115-015 (S. 756), 132 Stat. 015 (Dec. 21, 2018).

1

STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(I) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals are to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the

> factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)." As a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*,

3

836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

*Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on their behalf. The defendant may file a motion with the court after (1) fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a

4

request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021).

The defendant attests that he submitted requests for compassionate release in December 2021 and May 2022, and that the Warden never responded.[2] As it appears the defendant has exhausted his administrative remedies, the court will proceed to review the matter on the merits.

PROCEDURAL HISTORY

At the outset, it should be noted that the defendant was initially sentenced by the Honorable Margaret B. Seymour, U.S. District Judge, who retired in August 2022 and upon her retirement, this motion was referred to the undersigned. The procedural history recited hereinafter reflects the activities in this case while it was before Judge Seymour.

The defendant, a citizen of Mexico and illegally in United States, was one of three defendants named in a four-count Superseding Indictment filed in this district in March 2011. Count 1 charged that beginning as early as May 2007, and continuing up to the Indictment including March 16, 2011, the defendants knowingly and intentionally conspired to possess

---

[2] In the exhibit to his motion for compassionate release (ECF No. 417), the defendant attaches a copy of his request for compassionate release dated May 31, 2022 to the Warden at FCI Oakdale. In list form, he states that he should be released to time served or home confinement for the following facts: (1) he is 46 years of age; (2) he has health and family problems; (3) there is a sentencing disparity concerning his case and his co-defendants; (4) he is more vulnerable to the pandemic and a bad outcome; (5) he has taken multiple classes while incarcerated; (6) he has demonstrated good conduct; (7) he was incarcerated for a non-violent crime; (8) if released to home, he will have a lower risk of contracting COVID-19; (9) he poses absolutely no danger or harm to the community; (10) he has a job upon release; (11) there are several similar cases with identical facts that have been granted compassionate release; and (11)[sic] his parent(s) are incapacitated and he is the only caregiver; and (12) courts are still granting compassionate release to vaccinated persons. The defendant then attaches multiple pages of summaries of case law where compassionate release has been granted. However, only those issues raised in his pending motion for compassionate release before this court will be addressed.

and distribute 5 kilograms or more of cocaine. The defendants had been involved with transporting large quantities of cocaine from Texas into South Carolina.

On August 23, 2011, pursuant to a written plea agreement (ECF No. 132), the defendant pleaded guilty to Count 1 of the Superseding Indictment which charged him with conspiracy to possess with intent to distribute and distribute cocaine and possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.

The Presentence Report (PSR) (ECF No. 273) indicated that the defendant was accountable for 2,956.02 kilograms of marijuana equivalent. His base offense level was 32 and he received a 2-level enhancement for possessing a firearm, as well as a 3-level reduction for acceptance of responsibility. The resulting total offense level was 31 and his criminal history category was III. This generated a Guideline sentencing range of 135 to 169 months of incarceration.

At the continuation of the sentencing hearing on November 29, 2012, the government moved to hold the defendant in breach of his plea agreement because he had failed a polygraph examination.[3] Judge Seymour court determined that the defendant had, in fact, failed a polygraph test, and granted the government's motion, finding that the defendant had breached the agreement. Judge Seymour also removed the defendant's 3-level reduction for

---

[3] The plea agreement contained standard cooperation provisions, including a provision in which the defendant agreed to submit to a polygraph examination. The plea agreement also provided that the defendant's failure to pass any such polygraph examination would result in the obligations of the government within the plea agreement becoming null and void. On the other hand, if the defendant cooperated pursuant to the plea agreement and such cooperation was deemed by the government to provide substantial, the government was obligated to make a motion for a downward departure.

acceptance of responsibility. After these determinations, the defendant's Guideline range became 235 to 293 months imprisonment. Judge Seymour sentenced the defendant to a custodial term of 235 months.

Thereafter, the defendant filed an appeal of his sentence which the Fourth Circuit Court of Appeals dismissed (ECF No. 348) as a result of the defendant's appeal waiver in his plea agreement. Judge Seymour also denied the defendant's motion to vacate his sentence pursuant to 28 U.S.C. § 2255 (ECF No. 379).

In April 2016, Judge Seymour granted the defendant's motion for a reduction of his sentence pursuant to Amendment 782 of the U.S. Sentencing Guidelines. The defendant's sentence was reduced from 235 months to 188 months.

The defendant is now 47 years old and has received credit for time served since December 24, 2010. His anticipated release date is August 1, 2024 and he is housed at FCI Oakdale II. The record in this case also reflects that the defendant has an immigration detainer against him based upon a final order of removal from the United States Department of Homeland Security.

## DISCUSSION

### 1. *The Defendant's Medical Condition*s

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has

7

a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his or her medical conditions render them particularly susceptible to severe illness or death should he or she contract the virus. *See United States v. Youngblood*, 858 Fed. Appx. 96, 98 (4th Cir. 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

The defendant makes cursory references to "health conditions" as well as the "conditions of his imprisonment." In his motion before the court, the defendant first claims that he should be released based on his generalized concern of severe illness or death given the threat of COVID-19, which he argues is made more serious given his medical conditions. The defendant states that he has long-COVID[4] and other health conditions, yet he does not specifically name any single health condition that places him at increased risk of complications. The government notes that the defendant's BOP medical records do not show a condition that places him at an increased risk.

---

[4] Long COVID is an umbrella term that refers to COVID-19 symptoms that persist beyond the initial phase of a COVID-19 infection.

8

The government argues that the defendant does not present an extraordinary and compelling reason to warrant compassionate release because he has been vaccinated against COVID-19.  The government also notes that at the time its responsive brief was filed on November 18, 2022 (ECF No. 429) that at FCI Oakdale II where the defendant is held, there were zero COVID positive inmates, 1 positive staff member, 655 recovered inmates, 141 recovered staff, 237 vaccinated staff, and 2069 vaccinated inmates.

The government filed a sealed document (ECF No. 431) consisting of 146 pages of the defendant's BOP medical records from 2020–2022.  The majority of the records involve screening the defendant for COVID-19, his personal history of COVID-19, his quarantine, some dental records, and his resolved allergic rhinitis.  On an October 15, 2021 Health History Encounter Report, the defendant denied allergies, seizure, diabetes, cardiovascular issues, or hypertension.  No other health issues were listed and no diagnosis of long-COVID was indicated and no prescribed or over the counter medications were being taken.   The records show a COVID swab positive on January 13, 2022.   A Screening Report dated January 20, 2022 noted no cough, shortness of breath, fatigue, body aches, sore throat, diarrhea, headache, loss of taste or smell, nausea or vomiting and his oxygen saturation value was 98%.  An earlier Screening Report from January 17, 2022 noted that "patient denies symptoms and is afebrile" or without a fever.

After reviewing the defendant's medical records, the court determines that the defendant has not demonstrated an extraordinary and compelling reason for compassionate release.  As a result, it is not necessary for the court to address the § 3553(a) factors.

2. *Conditions of Confinement and the Pandemic*

The remainder of the defendant's motion does not mention any health conditions or concerns aside from the COVID-19 pandemic. The defendant does mention the "current state of confinement" which he contends includes lack of proper medical care, lack of proper nutrition, lack of recreational services, and continuous lockdowns.

The government notes that the defendant has contracted COVID-19 and successfully recovered. Additionally, the defendant has been fully vaccinated while incarcerated.

On this record, the court concludes that the defendant's reliance upon the threat of the COVID-19 pandemic, coupled with his complaints regarding the conditions of his confinement, fails to demonstrate extraordinary and compelling reasons for his release. As noted above, the defendant does not point to any medical problem that he personally experiences and makes bald assertions regarding the conditions of his confinement which are totally unsupported in the record.

As to the defendant's complaints of the general conditions of his confinement at FCI Oakdale II, such matters are generally raised under 42 U.S.C. § 1983 and must be properly exhausted before the BOP prior to review by a federal court.

3. *Sentence Credit Under the First Step Act*

The First Step Act (FSA) provides that an eligible inmate in BOP custody who successfully participates in evidence based recidivism reduction (EBRR) Programs or Productive Activities (PAs) recommended based on the inmate's risk and needs assessment will earn FSA Time Credits, to be applied toward prerelease custody ( i.e., transfer to a

10

Residential Reentry Center (RRC) or home confinement for service of a portion of the inmate's sentence) or transfer to supervised release ( i.e., early satisfaction of the inmate's term of imprisonment) under 18 U.S.C. 3624(g). The FSA provides that "[a] prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. 3632(d)(4)(A)(i). An inmate determined to be at a "minimum or low risk for recidivating" who, "over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. 3632(d)(4)(A)(ii).

As the FSA indicates in 18 U.S.C. 3632(d)(4)(E), an inmate who is subject to a final order of removal under immigration laws as defined in 8 U.S.C. 1101(a)(17) may not have FSA Time Credits applied toward prerelease custody or early transfer to supervised release under 18 U.S.C. 3624(g). The defendant is subject to a detainer based on a final order of removal. For this reason, the court must respectfully deny this portion of the defendant's motion.

4. *Danger to the Community*

The defendant contends that his record demonstrates he is not a danger to the community if released. This court respectfully disagrees. In addition to his instant federal offenses, the defendant has prior convictions for driving while intoxicated, assault on a family member, and unlawful carrying of a weapon.

As the government notes in its brief, the defendant was responsible for a large amount of cocaine and firearms, he lied about his role in the offenses, he failed a polygraph test, and lost his acceptance of responsibility at sentencing.

The defendant has submitted letters of support from several of his children which this court has carefully reviewed and finds no basis in these communications for a finding that the defendant is not a danger to the community.

As noted earlier in this order, because the court has determined that the defendant has not demonstrated an extraordinary and compelling reason for compassionate release, it is not necessary for the court to address the § 3553(a) factors.

### 5. *Post-Sentencing Conduct*

A review of the defendant's Individualized Need Plan reveals that he has taken more than 30 educational courses during his incarceration. It also notes that his GED progress is satisfactory. He has not yet participated in any drug education.

In his motion, the defendant contends that he has no disciplinary violations or non-compliance with BOP rules and regulations while incarcerated. However, the record belies the defendant's statements. BOP records indicate that the defendant has been sanctioned for possessing a contraband cell phone, fighting, phone abuse, and possessing gambling paraphenalia.

### 6. *Home Confinement*

To the extent that the defendant seeks to have this court direct the BOP to place the defendant in home confinement, this court is without authority to do so. The discretion to

release a prisoner to home confinement lies solely with the Attorney General. See 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g). The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this. See CARES Act, Pub. L. No. 116-136, 134 Stat 281, 516 (2020) ("During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.")

## CONCLUSION

The court has carefully considered the relevant statutes and case law, the full record in this matter and the individualized circumstances in this case. For the reasons stated herein, the defendant's motion (ECF No. 417) is respectfully denied.

IT IS SO ORDERED.

*Joseph F. Anderson, Jr.*

January 13, 2023  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge